1
2
3
4                    UNITED STATES DISTRICT COURT
5                         DISTRICT OF NEVADA
6
7    ADOBE SYSTEMS INCORPORATED,          )
8                        Plaintiff,        )          Case No.  2:10-cv-00422-LRH-GWF
                                           )
9    vs.                                   )          **ORDER**
                                           )
10   JOSHUA CHRISTENSON, *et al.*,          )
                                           )          **Motion to Compel - #73**
11                       Defendants.        )
     _____)
12   AND RELATED CLAIMS.                   )
     _____)
13
14          This matter is before the Court on Plaintiff Adobe Systems, Inc.'s Motion to Compel

15   Defendants' Supplemental Discovery Responses and Production of Documents (#73), filed on

16   December 20, 2010; Defendants' Opposition to Plaintiff's Motion to Compel (#76), filed on

17   January 7, 2011; and Plaintiff's Reply in Support of Plaintiff's Motion to Compel (#78), filed on

18   January 18, 2011.  The Court conducted a hearing in this matter on January 27, 2011.

19                              **BACKGROUND**

20          Plaintiff Adobe Systems, Inc. filed its Complaint for Copyright Infringement and

21   Trademark Infringement against Defendants Joshua Christenson and Software Surplus, Inc. in the

22   United States District Court for the Northern District of California on October 30, 2009.

23   Defendants responded to the Complaint by filing a motion to dismiss for lack of personal

24   jurisdiction or to transfer/change venue on December 20, 2009.  On March 8, 2010, the court

25   denied Defendants' motion to dismiss, but granted their motion to transfer the case to the District

26   of Nevada pursuant to 28 U.S.C. § 1406(a).  Defendants filed their Answer, Counterclaim and

27   Third Party Complaint (#39) in this district on May 4, 2010.

28   . . .

1   Plaintiff's Complaint alleges that it owns exclusive rights under the Copyright Act to

2   reproduce and distribute Adobe Software in the United States. *Complaint*, ¶ 8. Among the

3   software titles that it produces and distributes are *Acrobat, Creative Suite, Dreamweaver, Flash,*

4   *Illustrator, PageMaker, Photoshop* and *Shockwave*. Plaintiff attached to the Complaint a

5   "nonexhaustive list" of its copyright registrations for these titles. *Id.* Plaintiff further alleges that

6   products manufactured and sold by it bear Adobe's trademarks. These trademark products include

7   ADOBE, ACROBAT, CREATIVE SUITE, DREAMWEAVER, FLASH, ILLUSTRATOR,

8   MACROMEDIA, PAGEMAKER, PHOTOSHOP, POSTSCRIPT, READER and SHOCKWAVE.

9   *Id.*, ¶ 9. Plaintiff alleges that it has secured registrations for its trademarks, all of which are valid,

10  extant and in full force and effect. Plaintiff also attached a nonexhaustive list of its trademark

11  registrations as an exhibit to the Complaint. *Id.*, ¶ 10. Plaintiff alleges that Defendants Joshua

12  Christenson and Software Surplus, Inc. have engaged in the unlawful sale and distribution of

13  unauthorized copies of Plaintiff's software products through their online business

14  www.softwaresurplus.com. *Id.*, ¶¶ 12- 18. The Complaint alleges causes of action for copyright

15  infringement pursuant to 17 U.S.C. § 504 and trademark infringement pursuant to 15 U.S.C. §

16  1117. The Complaint does not identify the time period during which Defendants allegedly sold and

17  distributed infringing products.

18  Plaintiff served interrogatories, requests for production of documents and requests for

19  admissions on Defendants on or about August 24, 2010. Defendants served their discovery

20  responses on October 12, 2010 in which they objected to the requests on the grounds that the

21  Complaint "sets forth no time frames for any of the acts alleged therein, and, therefore, the

22  information sought . . . is irrelevant without a proper time context in the complaint." The parties'

23  counsel engaged in a dispute resolution conference on November 3, 2010. Plaintiff asserts that the

24  parties agreed that for purposes of responding to discovery, (1) the applicable default time frame

25  will be October 30, 2006 to the present, (2) that Plaintiff would again review the need to amend the

26  complaint to add dates, and (3) that Defendants would supplement their responses based on this

27  understanding. *Motion to Compel (#73), Exhibit "I"*. Plaintiff's counsel states that it was her

28  understanding that Defendants would supplement their discovery responses based on the October

2

30, 2006 to the present time frame. *Id, Affidavit of Annie S. Wang*.

Defendants' counsel asserts, however, that the agreement to supplement discovery responses was conditioned on Plaintiff filing an amended complaint to include a time frame for the alleged infringement. *Opposition to Motion to Compel (#76), Declaration of Lisa A. Rasmussen.* Instead of serving supplemental discovery responses, Defendants filed a *Motion for Judgment on the Pleadings or In the Alternative Motion to Compel Amendment of the Complaint (#70)* on December 5, 2010 in which they ask the Court to either dismiss the Complaint or require Plaintiff to file an amended complaint to include a specific time frame for the alleged infringement. Defendants argue that they should not be required to respond to Plaintiff's discovery requests until and unless an amended complaint is filed.

## DISCUSSION

1. **Defendants' Objection to Written Discovery Based on the Lack of an Allegation in the Complaint as to When the Alleged Infringement Occurred.**

Defendants argue that they should not be required to respond to written discovery because the time period of the alleged infringement is not set forth in the Complaint as required by Fed.R.Civ.Pro. 8(a). Plaintiff argues, however, that there is no requirement under Rule 8 or *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007), that a plaintiff plead the time period for Defendants' alleged copyright or trademark infringement. Plaintiff argues that, at minimum, it should be permitted to conduct discovery within the applicable statute of limitations period which is three years for copyright infringement. *See* 15 U.S.C. § 507(b); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481-82 (9th Cir. 1994); and *Polar Bear Productions, Inc. v. Timex Corporation*, 384 F.3d 700, 705-07 (9th Cir. 2004). Because Plaintiff has agreed to limit its discovery requests to such a time frame, it argues that Defendants' objections should be overruled and they should be ordered to supplement their discovery responses.[1]

_____

[1] In *Roley*, the Ninth Circuit stated that a claim for copyright infringement may be brought for all acts that accrued within three years preceding the filing of the suit. In *Polar Bear*, the court reversed a grant of summary judgment for the defendant on the statute of limitations grounds because there was no evidence that plaintiff was aware of defendant's alleged infringement more than three years prior to the filing of the complaint. There is no specific federal statute of

1     Some district courts have dismissed complaints, with leave to amend, where the

2  complaints fail to set forth the operative dates with respect to the applicable statute of limitations.

3  In *Ackley v. City of Fort Lauderdale, Building Dept.*, 2007 U.S. LEXIS 73118 (S.D. Flor. 2007), for

4  example, the court dismissed an action under the Fair Labor Standards Act ("FLSA") where the

5  complaint failed to state the dates of plaintiff's employment.  The court noted that FLSA claims are

6  governed by either a two or three year limitations period depending on whether the alleged

7  violations are willful.  In *Loftus v. S.E. Pa. Transp. Authority*, 843 F.Supp. 981 (E.D. Pa. 1994), the

8  court dismissed a complaint alleging a conspiracy to violate the plaintiff's civil rights under 42

9  U.S.C. § 1983, where the complaint failed to allege that the defendants acted in concert and no time

10  period was alleged as to when the alleged conspiracy occurred.  Obviously, an allegation in the

11  complaint as to when the defendant's alleged wrongful conduct occurred provides greater notice.  It

12  also serves to inform the defendant whether the alleged breach or other wrongful conduct occurred

13  within the statute of limitations.  *Allen v. Dairy Farmers of America, Inc.*, 2010 U.S. Dist. LEXIS

14  90309 at *74-75 (D. Vt. 2010) states, however, that because the statute of limitations is an

15  affirmative defense which the defendant has the burden of pleading and proving, a plaintiff need

16  not affirmatively plead facts showing the absence of such a defense in order to state a claim.  *See*

17  *also Ortiz v. City of New York*, 2010 WL 5116129 at *1 (E.D.N.Y. 2010).

18     The issue on the instant motion to compel is whether Defendants should be required to

19  respond to Plaintiff's discovery requests prior to a decision on their motion for judgment on the

20  pleadings or, alternatively, to require Plaintiff to amend its complaint.  By objecting to the written

21  discovery requests and refusing to supplement their responses, Defendants, in effect, seek a stay of

22  written discovery pending decision on the motion for judgment on the pleadings.  In *Blankenship v.*

23  *Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975), the Ninth Circuit stated that a party carries a heavy

24  burden of making a "strong showing" why discovery should be stayed.  The movant must show a

25

26  limitations for trademark infringement.  The courts instead look to the relevant state statute of
27  limitations.  *Aristocrat Technologies, Inc. v. High Impact Design & Entertainment*, 2009 WL
   1811464 at *3-4 (D. Nev. 2009), holds that the applicable statute of limitation in Nevada is four
28  years which runs from the time that plaintiff knew or should have known about his cause of action.

4

1   particular and specific need for a discovery stay.  It cannot base its request on stereotyped or
2   conclusory statements.  *Skellerup Industries Limited v. City of Los Angeles*, 163 F.R.D. 598, 600
3   (C.D. Cal. 1995).  Whether discovery should be stayed pending the outcome of a dispositive motion
4   involves a case-by-case analysis.  The factors the court should consider include: "'[T]he type of
5   motion and whether it is a challenge as a 'matter of law' or the 'sufficiency' of the allegations; the
6   nature and complexity of the action; whether counterclaims and/or cross-claims have been
7   interposed; whether some or all of the defendants join in the request for a stay; the posture or stage
8   of the litigation; the expected extent of the discovery in light of the number of parties and
9   complexity of the issues in the case; and any other relevant circumstances.  *Skellerup*, 163 F.R.D. at
10   601, quoting *Hachette Distribution, Inc. v. Hudson County News Company*, 136 F.R.D. 356, 358
11   (E.D.N.Y. 1991).  *See also Lofton v. Bank of America Corporation*, 2008 WL 2047606 (N.D. Cal.
12   2008) and *U.S. Philips Corporation v. Synergy Dynamics International, LLC*, 2006 WL 3453225
13   (D. Nev. 2006).
14        If the District Judge agrees with Defendants' position that the time frame for the alleged
15   infringement should be pled in the complaint, he will in all likelihood grant Plaintiff leave to amend
16   the complaint to allege claims for copyright or trademark infringement that occurred within the
17   statue of limitations period.  Because Plaintiff has already agreed to limit its discovery to that
18   period, Defendants have not demonstrated good cause why they should not be required to respond
19   to Plaintiff's discovery requests.  Defendants will not be prejudiced by being required to respond to
20   discovery within this stipulated time period.  Defendants presumably know whether or when they
21   sold or distributed products that allegedly infringe on Plaintiff's copyrights or trademarks and will
22   be able to assert any valid statute of limitations defenses they may have.  The absence of prejudice
23   is also demonstrated by the fact that Defendants have engaged in deposition discovery
24   notwithstanding the lack of a time allegation in the Complaint.  Accordingly, Defendants'
25   objections to Plaintiff's written discovery requests based on the lack of an allegation of a time
26   frame for the alleged infringement in the Complaint are overruled.  The Court now turns to
27   Defendants' other objections to Plaintiff's Interrogatories, Requests for Admissions and Requests
28   for Production of Documents.

1      **2.**      <u>**Interrogatories**</u>

2      Plaintiff has withdrawn its motion to compel responses to Interrogatory Nos. 1, 2, 3, 9, 10

3 and 11. This leaves for resolution Plaintiff's motion to compel Defendants to respond to

4 Interrogatory Nos. 4 through 8.

5      Interrogatory No. 4 asks Defendants to IDENTIFY all accounts that ever came into contact

6 with any money connected to the sale of the DISPUTED PRODUCT. Interrogatory No. 5 asks

7 Defendants to IDENTIFY all PERSONS to whom YOU sold the DISPUTED PRODUCT at any

8 time since 2006 to the present. Interrogatory No. 6 asks Defendants to state the total number of

9 sales made by YOU of the DISPUTED PRODUCT at any time since 2006 to the present.

10 Interrogatory No. 7 asks Defendants to state the revenues received by YOU from the sale of the

11 DISPUTED PRODUCT at any time since 2006 to the present. Interrogatory No. 8 asks the

12 Defendants to state the dollar amount of all profits received by YOU from the sale of the

13 DISPUTED PRODUCT at any time since 2006 to the present. The capitalized words and terms in

14 the interrogatories and other discovery requests are expressly defined in the "Definitions" sections.

15      Defendants objected to all of these Interrogatories on the grounds that they are vague,

16 ambiguous, seek information that is not relevant, and are not reasonably calculated to lead to the

17 discovery of admissible evidence, because like the Complaint, they make no reference to time

18 frames. As the Plaintiff notes, however, the interrogatories do, in fact, refer to matters since 2006.

19 In any event, based on Plaintiff's stipulation that Defendants may respond to the discovery during

20 the time frame from October 30, 2006 to the present, Defendants' objections to these interrogatories

21 based on the lack of an alleged time frame are overruled.

22      At the beginning of their Responses to Interrogatories, Defendants asserted certain standing

23 or general objections, including an objection that the term DISPUTED PRODUCT is vague and

24 ambiguous. The Court agrees that the definition of this term is somewhat confusing, vague and

25 ambiguous. Plaintiff's Complaint alleges, however, that it has valid copyrights for the software

26 titles *Acrobat, Creative Suite, Dreamweaver, Flash, Illustrator, PageMaker, Photoshop* and

27 *Shockwave*. Plaintiff also alleges that it has valid trademarks for products including ADOBE,

28 ACROBAT, CREATIVE SUITE, DREAMWEAVER, FLASH, ILLUSTRATOR,

1   MACROMEDIA, PAGEMAKER, PHOTOSHOP, POSTSCRIPT, READER and SHOCKWAVE.

2   Plaintiff alleges that Defendants sold and distributed unauthorized copies of Plaintiff's software

3   products in violation of its copyrights and trademarks.  Within that context, the term "DISPUTED

4   PRODUCT" is reasonably clear and Defendants can answer Interrogatory Nos. 4-8 and respond to

5   other discovery requests that use the defined term DISPUTED PRODUCT.  Defendants can also

6   respond without necessarily admitting that Plaintiff's software and products are protected by valid

7   copyrights or trademarks.

8          Defendants also objected to Interrogatory No. 8 on the ground that the word *profit* is not

9   defined in the Interrogatory.  Common or ordinary definitions of *profit* include "the excess of

10  returns over expenditure in a transaction or series of transactions" or  "the excess of the price

11  received over the cost of purchasing and handling or producing and marketing goods."  *Webster's*

12  *Third New International Dictionary* (2002).  *Black's Law Dictionary*, Ninth Edition (2009)

13  similarly defines *profit* as "the excess of revenues over expenditures in a business transaction" and

14  defines *net profit* as "total sales revenue less the costs of the goods sold and all additional

15  expenses."  Given that the preceding Interrogatory No. 7 asks Defendants to state the *revenues* they

16  received from the sale of the DISPUTED PRODUCT, the word *profit* as used in Interrogatory No. 8

17  should be understood in accordance with the foregoing common definitions of that word.  With that

18  understanding, Defendants' objection based on this alleged ambiguity is also overruled.

19         Defendants have not otherwise argued that the number of sales or the revenues and profits

20  they received from the sale or distribution of the DISPUTED PRODUCT are irrelevant.  Plaintiff is

21  clearly entitled to discover such information in order to prove their alleged damages.   Accordingly,

22  Defendants objections to Interrogatory Nos. 4-8 are overruled and Defendants are hereby ordered to

23  answer these interrogatories.

24         **3.      Requests for Admissions**

25         Rule 36(a)(1) of the Federal Rules of Civil Procedure provides that a party may serve on any

26  other party a written request to admit, for purposes of the pending action only, the truth of any

27  matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or

28  opinions about either, and (B) the genuineness of any described document.  Subsection (a)(4)

7

1   provides that if a matter is not admitted, the answer must specifically deny it or state in detail why

2   the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the

3   substance of the matter; and when good faith requires that a party qualify an answer or deny only a

4   part of a matter, the answer must specify the part admitted and qualify or deny the rest.  The

5   answering party may assert lack of knowledge or information as a reason for failing to admit or

6   deny only if the party states that it has made reasonable inquiry and that the information it knows or

7   can readily obtain is insufficient to enable it to admit or deny.

8          Rule 36(a)(6) provides that the requesting party may move to determine the sufficiency of

9   an answer or objection.  Unless the court finds the objection justified, it must order that an answer

10  be served.  If the court finds that an answer does not comply with the rule, it may order either that

11  the matter is admitted or that an amended answer be served.  The court may defer its final decision

12  until a pretrial conference or a specified time before trial.

13         The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true

14  and thus narrowing the range of issues for trial.  *Asea, Inc. v. Southern Pacific Transportation Co.,*

15  669 F.2d 1242, 1245 (9th Cir.1982); *FDIC v. Halpern*, 271 F.R.D. 191 (D.Nev. 2010); *A Farber &*

16  *Partners, INc. v. Garber ("Farber")*, 237 F.R.D. 250, 254 (C.D. Cal. 2006).  "Parties may not view

17  requests for admission as a mere procedural exercise requiring minimally acceptable conduct.  They

18  should focus on the goal of the Rules, full and efficient discovery, not evasion and word play."

19  *Farber*, at 254, quoting *Marchand v. Mercy Med. Ctr.,* 22 F.3d 933, 936-37 (9th Cir.1994).  The

20  statement of the fact in a request for admission should be stated in simple and concise terms in

21  order that it can be admitted or denied with an absolute minimum of explanation or qualification.

22  *United Coal Companies v. Powell Construction Co.*, 839 F.2d 958, 967-68 (3rd Cir. 1988).  *See also*

23  *Herrera v. Scully*, 143 F.R.D. 545, 546 (S.D.N.Y. 1992) (stating that each request should be limited

24  to a singular relevant fact.)  Rule 36 does not require a party to explain why a request was denied,

25  but only why it cannot admit or deny the request.  *Safeco of America v. Rawstron*, 181 F.R.D. 441,

26  447 (C.D. Cal. 1998).

27         In this case, Plaintiff has served 203 requests for admission on each Defendant.  The

28  requests to each Defendant are identical, or nearly identical, and the responses of both Defendants

8

are likely to be the same.  Although numerous, the requests can be grouped into a more limited number of categories.  By serving separate requests for each singular act or fact, the requests avoid being compound and permit Defendants to admit or deny the requests with less need to qualify or explain their responses.  That stated, it is questionable whether all of the requests seek admission of material facts.  Some of the requests are unnecessary because they seek admissions of matters that are clearly undisputed.  *See Request Nos. 198-202 discussed infra.*  The Court concludes on balance, however, that the number of requests for admission are not unduly burdensome.

Request Nos. 82-85 ask Defendants to admit that they advertised, offered for sale, sold or distributed the "DISPUTED PRODUCT."  Request Nos. 86-89 then ask Defendants to admit that they did not have permission from Plaintiff to advertise, offer for sale, sale or distribute the "DISPUTED PRODUCT."  Defendants objected to these requests on grounds that the requests are vague, ambiguous, and irrelevant because they make no reference to time frame.  Defendants' objections to Request Nos. 82-89 are overruled and they are ordered to admit or deny the requests, or explain why they cannot admit or deny them in accordance with the requirements of Rule 36(a)(4).

Request Nos. 90-93 ask Defendants to admit that they did not have permission from the Plaintiff to advertise, offer for sale, sell or distribute "any product."  In addition to their objections relating to time frame, Defendants object that the reference to "any product" is overbroad, beyond the scope of the complaint and irrelevant.  The scope relevancy under Rule 26(b)(1) is very broad.  If it is established by admission or otherwise that Defendants did not have permission from Plaintiffs to sell any product, this would arguably eliminate any basis for Defendants to argue that they reasonably believed they had Plaintiff's permission to sell the DISPUTED PRODUCT.  Because the Court cannot rule out the relevance of the inquiry, Defendants objections on this basis are overruled and they are ordered to respond to Request Nos. 90-93.

Request No. 94 asks Defendants to admit that they "earned a *profit* (emphasis added) from the sale of the DISPUTED PRODUCT and each of them."  Request Nos. 95-99 then ask Defendants to admit that they earned a NET PROFIT in excess of a stated amount from the sale of the DISPUTED PRODUCT.  The Requests for Admissions define NET PROFIT as "the total profit

after deducting all costs from gross receipts." This definition is consistent with the common

dictionary definitions of *profit*. Defendants objected to Request No. 94 on the grounds that *profit*

is vague and ambiguous. If Plaintiff intends *profit* to have a different meaning than NET PROFIT,

then Request No. 94 is vague and ambiguous. The Court concludes, however, that absent an

expressly different definition, *profit* should be given the same meaning as NET PROFIT. With that

understanding, Defendants' objections to Request Nos. 94-99 are overruled and they are ordered to

admit or deny them.

Request Nos. 101-104 ask Defendants to admit that their advertisement, offer for sale, sale

or distribution of the DISPUTED PRODUCT infringed Plaintiff's exclusive rights in the

COPYRIGHTS. Defendants objected to these requests on the grounds that they call for legal

conclusions and are vague, ambiguous and irrelevant. Rule 36(a)(1)(A) states that a request may

call upon a party to admit facts, the application of law to facts, or opinions about either.

Defendants' objection that these requests call for legal conclusions is therefore overruled. The

objections based on vagueness, ambiguity and irrelevancy are also overruled and Defendants are

ordered to respond to these requests.

The Court makes no determination, however, as to whether Defendants possess sufficient

information to be able to admit or deny Request Nos. 101-104. It is conceivable that Defendants

possess information regarding the validity of Plaintiff's copyrights that would allow them to admit

or deny the requests. Plaintiff, however, has the burden of proving the validity of its copyrights and

trademarks. It cannot shift that burden to Defendants by simply attaching a list of its alleged

copyright or trademark registration numbers to its complaint, and then require Defendants to

conduct an investigation to determine whether the referenced copyrights or trademarks do, in fact,

exist and are valid. A responding party's duty to investigate only requires that it to make a

reasonable effort to secure information that is readily obtainable from persons and documents

within the responding party's relative control. *FDIC v. Halpern*, 271 F.R.D. 191 (D.Nev. 2010),

quoting *Asea, Inc. v. Southern Pacific Transportation Co.,* 669 F.2d 1242, 1245 (9th Cir.1982).

Accordingly, Defendants are ordered to respond to Request Nos. 101-104. They should either

admit or deny the requests, or state that they cannot admit or deny and provide a reasonable

1    explanation as to why they cannot respond.

2            Defendants objected to Request Nos. 110-115, 119-120, 123-132, and 140-143 on the

3    grounds of vagueness, ambiguity and irrelevancy based on the lack of a time frame in the

4    complaint.  Defendants have not cited other grounds for objecting to these requests.  The Court

5    therefore overrules the objections and orders the Defendants to respond to these requests.

6            Request Nos. 136 and 137 respectively ask the Defendants to admit that "[e]ven after

7    learning of concerns regarding the legitimacy of the DISPUTED PRODUCT,  Defendants

8    continued to sell or advertise for sale the DISPUTED PRODUCT.  In addition to their other

9    objections, Defendants object that the phrase "[e]ven after learning of concerns regarding the

10   legitimacy" is vague and ambiguous.  The Court agrees with Defendants that this phrase is vague

11   and open to wide interpretation as to its meaning.  The Court therefore sustains the objection to the

12   requests on this ground.

13           Request No. 148 asks Defendants to admit that they advertised Adobe software product as a

14   "Full" version when it was an "academic version."  Request No. 149 asks Defendants to admit that

15   they sold Adobe product in DVD cases alone.  Defendants object to these requests as vague and

16   ambiguous because "Adobe product' is not defined in the request, and Request No. 148 does not

17   specifically identify the product referred to as a "Full" or "academic version."  Defendants'

18   vagueness and ambiguity objections are reasonable to the extent that Plaintiff has not clarified what

19   "Adobe product" means in comparison to the DISPUTED PRODUCT.  For this same reason,

20   Defendants' objections to Requests Nos. 152-155 are also valid.  The meaning of "Adobe product,"

21   however, can probably be readily defined and clarified in a meet and confer conference between

22   counsel.  The Court therefore orders Plaintiff to provide Defendants with a clarification of this

23   term, as well as the terms "Full" and "academic versions."   Upon receiving reasonable

24   clarification, Defendants should respond to Request Nos. 148, and 152-155.

25           Request Nos. 150 and 151 ask Defendants to admit that OEM software is distributed with

26   specific hardware and OEM software is not to be unbundled from the hardware it came with.

27   Defendants objected to these requests as vague and ambiguous but did not cite any specific reason

28   why they are vague.  It also appears that Defendants use and define the term OEM in their

11

1
2
3

literature. *See Reply (#78), Exhibit B.*  To the extent that this term needs any further clarification, Plaintiff should provide it.  Subject to such clarification as necessary, Defendants' objections to Request Nos. 150 and 151 are overruled and they are ordered to respond to these requests.

4
5
6
7
8
9
10
11
12
13
14
15
16

      Request No. 163 asks Defendants to admit that "the reviews attached hereto as Exhibit C were posted on "resellerratings.com."  Request No. 178 asks Defendants to admit that "the reviews attached hereto as Exhibit D were posted on "Eopinions.com."  According to the information in Exhibit C, "resellerratings.com" is a website that provides "[c]onsumer reviews of online stores." "Eopinions.com" appears to provide a similar service.  Exhibits C and D contain reviews or comments that were allegedly posted on these websites by individuals who had purchased products from "www.softwaresurplus.com."  Request Nos. 164, 165, 179 and 180 ask Defendants to admit that individuals identifying themselves as Defendants' customers posted complaints about Defendants on these internet websites.  Request Nos. 166-177, and 181-191, further ask Defendants to admit that certain specific comments, such as "THIS IS A SCAM" (Request No. 166), were posted on the websites on the dates indicated in the postings.  Request Nos. 192 and 193 ask Defendants to admit that links for the reviews at  "resellerratings.com" and "Eopinions.com" appear on the first page of a Google search for the search terms "software surplus."

17
18
19
20
21
22
23
24
25
26

      The information in these postings is allegedly relevant to Plaintiff's defense to Defendants' counterclaim for defamation.  Defendants allege that Plaintiff and an entity known as SIIA made defamatory statements about them in press releases that were published after this lawsuit was filed. *See Counterclaims and Third Party Claims (#39)*, ¶¶ 9-24  Plaintiff intends to introduce the "resellerratings.com" and  "Eopinions.com" postings to show that Defendants' business reputation was not harmed by the Plaintiff's allegedly defamatory statements.  Plaintiff does not ask Defendants to admit the truth of the statements contained in the postings, but only that the reviews and comments were posted on the websites on the dates indicated.  Defendants objected to these requests on the grounds that Exhibits C and D are unauthenticated and Defendants are without information sufficient to respond to the requests and deny them on that basis.

27
28

      One purpose of Rule 36 is to establish the genuineness of described documents.  A copy of the document must accompany the request unless it has been otherwise furnished or made available

for inspection and copying.  Fed.R.Evid. 901(a) states that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Rule 901(b) provides several illustrations of how various types of evidence can be authenticated.  Fed.R.Evid. 902 states that certain types of evidence listed in the rule are "self-authenticating" and do not require "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility."  This includes "printed materials purporting to be newspapers or periodicals."  Rule 902(6).  According to the 1972 Notes to this subsection,  "[t]he likelihood of forgery of newspapers or periodicals is slight indeed.  Hence, no danger is apparent in receiving them."  Even as to printed newspapers and periodicals, this statement is antiquated.  Wright & Gold, 31 Federal Practice and Procedure: Evidence §7140, states in this regard: "Given the widespread availability of computers, scanners, publishing software, and access to newspapers and periodicals on the internet, it is now relatively easy to create a convincing forgery of such an item.  Perhaps a more convincing rationale for Rule 902(6) today is that forgeries of newspapers and periodicals are easy to expose because genuine copies usually are readily available for comparison."

Courts do not treat printouts from internet websites as self-authenticating or admit them without foundation or authentication.  The court in *In re Homestore.com., Inc. v. Securities Litigation*, 347 F.Supp.2d 769, 782-783 (C.D. Cal. 2004), states in this regard:

> Printouts from a web site do not bear the indicia of reliability demanded for other self-authenticating documents under Fed.R.Evid. 902.  To be authenticated, some statement or affidavit from someone with knowledge is required; for example, Homestore's web master or someone else with personal knowledge would be sufficient.

*See also Victaulic v. Tieman*, 499 F.3d 227, 236 (3rd Cir. 2007); *In re Easysaver Rewards Litigation*, ---F.Supp.2d ---, 2010 WL 3259752  at 5 (S.D.Cal. 2010); *Novak v. Tucows, Inc.*, 2007 WL 922306 at *5 (E.D.N.Y. 2007); *Sklar v. Clough*, 2007 WL 2049698 at *6 (N.D.Ga. 2007); and *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F.Supp.2d 1146, 1153-54 (C.D. Cal. 2002) (holding that plaintiff provided a sufficient declaration to authenticate exhibits printed from the internet.).

In *Lorraine v. Markel American Insurance Co.*, 241 F.R.D. 534, 553 (D. Md. 2007), the court noted that "[a]uthentication also can be accomplished in civil cases by taking advantage of

13

1  FED.R.CIV.P. 36, which permits a party to request that his or her opponent admit the 'genuineness
2  of documents.'"  A party, however, cannot use Rule 36 to shift the burden of authenticating third
3  party documents to the opposing party. *FDIC v. Halpern*, *supra*.  Some proof of authenticity of the
4  website information must accompany the request in order to obligate the responding party to admit
5  or deny the authenticity of the document or the information contained therein.

6         In this case, Plaintiff has only attached printouts from the "resellerratings.com" and
7  "Eopinions.com" websites.  These printouts are insufficient to establish the authenticity of the
8  exhibits, themselves, or of the customer reviews and comments contained therein.  Assuming that
9  Defendants do not possess independent knowledge concerning the subject websites and their
10 content, they have no duty to investigate the authenticity of the printouts or whether the referenced
11 reviews and comments were, in fact, posted on the websites.  Defendants' objections to Request
12 Nos. 163-191 based on lack of authentication, and their statement that they do not have sufficient
13 information to admit or deny the requests are therefore sustained.

14        Although Defendants can probably determine, with little difficulty, whether a *current*
15 Google search for the search terms "software surplus" provides links on the first page for the
16 "resellerratings.com" and "Eopinions.com" websites, this would not prove that such a search would
17 have resulted in such a link at a prior point in time.  It is Plaintiff's burden to prove this proposition
18 to the extent it is relevant and admissible.  The Court therefore also sustains Defendants' objections
19 and responses to Request Nos. 192 and 193.

20        Request No. 197 asks Defendants to admit that the PRESS RELEASE does not state that
21 Defendants sold "counterfeits."  Defendants did not object to this Request, but respond only by
22 stating that the PRESS RELEASE "speaks for itself."  Request Nos. 198-201 ask Defendants to
23 admit that they were sued by Adobe for copyright infringement, trademark infringement, and for the
24 sale of unauthorized copies of Adobe's software.  Request No. 202 asks Defendants to admit that
25 Adobe's Complaint charges them with knowingly engaging in copyright infringement through
26 fraudulent sale of Adobe software.  Defendants objected to these requests on the grounds that they
27 are vague and ambiguous and state that the Complaint "speaks for itself."

28 . . .

14

1    In *FDIC v. Halpern*, 271 F.R.D. 191 (D.Nev. 2010), this court held that the statement "the

2    document speaks for itself" in response to a request for admission characterizing the content or

3    meaning of a contract document was evasive.  Requests that characterize or construe the meaning

4    of material documents in the case may serve to establish what issues are actually in dispute.  In this

5    case, Defendants may or may not contend that the PRESS RELEASE accused them of selling

6    counterfeits.  Defendants should therefore admit or deny Request No. 192.  The Court, however,

7    denies Plaintiff's motion to compel Defendants to respond to Request Nos. 198-202.  The

8    Complaint clearly alleges claims against Defendants for copyright infringement, trademark

9    infringement, and sale of unauthorized copies of Adobe's software, ¶ 17.  It also clearly alleges that

10   Defendants' copyright infringement was willful.  ¶ 20.  No legitimate evidentiary or discovery

11   purpose is served by Request Nos. 198-202. The Court will therefore not require responses to such

12   requests.

13        **4.      Requests for Production of Documents.**

14        Plaintiff served 68 Requests for Production of Documents on each Defendant and moves to

15   compel Defendants to respond to 31 of those requests.  *See Motion to Compel (#73), Exhibit "C."*

16   Defendants objected to all of the requests at issue on the grounds that the requests are unduly

17   burdensome, vague, ambiguous and irrelevant.  Defendants again objected because of the lack of a

18   time frame in the Complaint.

19        Rule 34(b)(1)(A) states that a request for production must describe with reasonable

20   particularity each item or category of items to be inspected.  A discovery request should be

21   sufficiently definite and limited in scope that it can be said "to apprise a person of ordinary

22   intelligence what documents are required and [to enable] the court . . .  to ascertain whether the

23   requested documents have been produced."  *Regan-Touhy v. Walgreen Company*, 526 F.3d 641,

24   649-650 (10th Cir. 2008) citing Wright & Miller, 8A Federal Practice and Procedure § 2211 at 415.

25        In *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 623 (D.Kan. 2005), the court

26   further states:

27        . . .

28        . . .

15

> [A] request may be overly broad on its face "if it is couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope." A request seeking documents "pertaining to" or "concerning" a broad range of items "requires the respondent either to guess or move through mental gymnastics ... to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request." When, however, the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents, the request will not be deemed overly broad on its face.

*Cardenas* cited the following types of facially overbroad requests:

> For example, the Court held a request overbroad and unduly burdensome on its face where it sought all documents "regarding" or "relating to" to the lawsuit and the eleven plaintiffs and their EEOC charges. *See Aikens,* 217 F.R.D. at 538. This Court also held a request in a breach of contract suit overly broad on its face where it sought documents that referred or related to any alleged or actual breaches of the contract at issue, the plaintiff's reasons for breaching the contract, and communications between the defendant and any other person regarding termination of the contract. *See W. Res. v. Union Pacific R.R.,* No. 00-2043-CM, 2001 WL 1718368, at *3 (D.Kan. Dec.5, 2001). Similarly, this Court held a request facially overbroad where it requested "all documents concerning plaintiff." *See Pulsecard, Inc. v. Discover Card Servs.,* No. 94-2304-EEO, 1996 WL 397567, at *6 (D.Kan. July 11, 1996).

Plaintiff requests for production skirt the edge of what can be called "reasonable particularity." The Requests give the words and terms DOCUMENT, RELATE TO and RELATING TO their broadest possible meanings. *Motion to Compel (#73), Exhibit "C."* They also define the categories of information sought in broad terms. For example, Request Nos. 5, 6 and 7 request DOCUMENTS RELATING TO PLAINTIFF, the COPYRIGHTS and the TRADEMARKS. The terms COPYRIGHTS and TRADEMARKS are, in turn, defined as the copyrights and trademarks owned by Plaintiff Adobe Systems Incorporated *including, but not limited to,* those listed in Exhibits A and B to the Complaint. *Id.* These requests are cited for illustration and are not the only arguably overbroad requests.

Plaintiff is clearly entitled to production of non-privileged documents in Defendants' possession, custody and control relating to Defendants' acquisition, manufacture, advertisement, distribution or sale of software products that allegedly infringe upon Adobe's copyrights and trademarks. They are also entitled to obtain documents regarding Defendants' revenues and profits

16

1   from the sale of those products.  Plaintiff is also entitled to production of documents which

2   evidence Defendants' knowledge of Adobe's copyrights and trademarks, the validity or invalidity

3   thereof, and information concerning other litigation in which Defendants have been involved

4   relating to the alleged infringement of copyright, trademark, service mark or other alleged acts of

5   unfair competition.  In their opposition to the motion to compel, Defendants stated that they were in

6   the process of producing responsive documents in electronic format.  It also appeared that as of the

7   date of the hearing, Defendants had produced some documents to Plaintiff.

8          Based on the Court's decision on the "time frame" objection, Defendants should  produce

9   relevant and responsive documents for the time period from October 30, 2006 to the present.  It

10  would be pointless, however, to further attempt to define and limit the scope of the various requests

11  for production and Defendants' responses thereto.  Although the parties reportedly agreed to some

12  clarification of terms during their November 2010 telephone conference, *See Affidavit of Plaintiff's*

13  *Counsel Annie S. Wang (#73),* ¶ 7, it is unlikely that counsel discussed, let alone resolved, all or

14  most of the issues relating to the scope of the requests for production.  Furthermore, Defendants had

15  not yet produced any documents and the parties were not in a position to effectively discuss and

16  resolve what additional documents, if any, should be produced.

17         The Court therefore orders Defendants to complete their intended production of the

18  remaining documents on or before February 17, 2011.  If Plaintiff is dissatisfied with Defendants'

19  production of documents, then the parties should further meet and confer regarding the production

20  of documents, including clarifying and limiting the scope of the requests as appropriate.  If the

21  parties still cannot resolve the dispute, then Plaintiff may file a renewed motion to compel.  Any

22  renewed motion should be focused on the specific documents or categories of documents that

23  Plaintiff still seeks to obtain.  Accordingly,

24         **IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Defendants' Supplemental

25  Discovery Responses and Production of Documents (#73) is **granted**, in part, and **denied**, in part,

26  in accordance with the foregoing provisions of this order.

27         **IT IS FURTHER ORDERED** that Defendants shall serve supplemental answers to

28  interrogatories, responses to requests for admissions and responses to requests for production of

17

documents in compliance with this order on or before **February 17, 2011,** unless the parties agree
to a different deadline and/or the Court grants a request for additional time.

DATED this 7th day of February, 2011.

_____
GEORGE FOLEY, JR.
U.S. MAGISTRATE JUDGE